**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DARREN L. REAGAN,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  3:16-CV-2590-G-BH** |
| | § | |
| **RICKEY BURNS, et al.,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the amended complaint should be **DISMISSED** as frivolous and for failure to state a claim.

**I. BACKGROUND**

Darren L. Reagan (Plaintiff), an inmate in the federal Bureau of Prisons (BOP), sues Camp Administrator Rickey Burns (Administrator), Warden Eddy Mejia (Warden), Case Manager Abraham Chopan (Case Manager), Captain James McCarty (Captain), Special Investigation Supervisor Lieutenant Joseph Leap (Investigator), Unit Disciplinary Committee Chairwoman Lisa Jordan (UDC Chair), Case Management Coordinator Rhonda Kennedy (Coordinator), Associate Warden Eric Benson (Associate Warden), Discipline Hearing Officer J. Rosales (Hearing Officer), Regional Correctional Services Administrator Alan Cohen (Regional Administrator), and Regional Legal Counsel Jason Sicker (Counsel), in their individual capacities under 42 U.S.C. § 1983 for violations of his civil rights under the First, Fifth, Eighth, and Fourteenth Amendments to the Constitution. (docs. 23 at 3-5[2];  8 at 1-31.[3])

---

[1]  By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for full case management.

[2]  Citations to the record refer to the CM/ECF system page number at the top of each page.

[3]  Plaintiff's answers to the magistrate judge's questionnaire constitute an amendment to his complaint.  *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

Plaintiff claims that on or about March 14, 2014, while housed in the Federal Correctional Institute in Seagoville, Texas (the Camp), he contacted a congresswoman for assistance in attending his father's funeral. (doc. 23 at 46.) While he was ultimately able to attend the funeral, Administrator initially denied his travel request and was aggressive and confrontational. (*Id.*) Plaintiff filed a grievance complaining of Administrator's conduct, but it was denied. (*Id.*) Using profanity and obscene and abusive language, Case Manager refused to provide Plaintiff with the form to appeal that decision. (docs. 23 at 59; 3 at 38.) On April 30, 2014, Plaintiff filed a separate grievance against Case Manager for "staff misconduct." (doc. 3 at 38.)

Plaintiff had "one-on-one" meetings with Counselor, Associate Warden, and Coordinator about his grievances and was told that an audit revealed over a hundred grievances and complaints about Case Manager. (doc. 23 at 46-47, 62-64.) On June 25, 2014, Plaintiff was interviewed by Investigator and signed a sworn statement about his interaction with Case Manager. (*Id.* at 46; doc. 3-4 at 8.) Investigator told him that his statement was confidential, and information about his interview and the investigation could not be shared or discussed with anyone else. (*Id.*) Investigator was also interviewing other inmates about their misconduct claims against Case Manager. (*Id.*) One of those inmates allegedly spoke about his interview with Plaintiff and other inmates, and told them that someone was going to be relocated to the Special Housing Unit (SHU) and eventually transferred to another prison. (docs. 3-1 at 19; 13 at 5-6.)

On June 30, 2014, Administrator met with Plaintiff and five other inmates and "began ranting and raving and threatening them about the consequences of inmates contacting their congressional representatives." (doc. 23 at 51.) Later that afternoon, Plaintiff was reassigned to the SHU. (*Id.*) Plaintiff claims his cell was poorly ventilated and a "frying pan 24/7" in the summer and "below

2

freezing temperatures during the winter months." (doc. 23 at 56.)  He alleges that inmates were forced to strip down to their underwear to tolerate the heat, and the cells had an overwhelming odor of ammonia because inmates were only allowed to shower three times per week. (*Id.* at 9.)  Plaintiff claims he has diabetes but did not receive diabetic-specific meals, and medical staff never evaluated him for his diabetes, or properly treated him for dehydration, dizziness, and heat rash. (*Id.* at 32.) He also suffered "severe injuries" to both of his feet and lower legs because medical staff refused to issue a medical pass for special shoes and a lower bunk. (*Id.* at 49.)

On August 6, 2014, Investigator issued an incident report against Plaintiff for discussing the investigation with other inmates and disobeying his order to keep that information confidential. (docs. 23 at 47; 3-3 at 79-82.)  He was initially charged with engaging in disruptive behavior, including refusing an order and encouraging a group demonstration, but Investigator rewrote the incident report to add an extortion charge on September 18, 2014.  (docs. 23 at 60; 3-3 at 81, 83.) Both incident reports were reviewed by the Unit Disciplinary Committee (UDC), and UDC Chair submitted the case for a disciplinary hearing. (doc. 3-3 at 91.)

On October 20, 2014, a disciplinary hearing was conducted by Hearing Officer. (doc. 3-4 at 7.)  Plaintiff requested and was appointed a staff representative at the hearing, and he and other witnesses, including those he requested, testified at the hearing.  (*Id.*)  On October 30, 2014, Hearing Officer found Plaintiff guilty of conduct that disrupted the orderly running of the institution and refusal to obey an order, but determined that there was insufficient evidence to substantiate the extortion charges.  (*Id.* at 8.)  As a result, she sanctioned Plaintiff with temporary loss of certain privileges and disciplinary segregation.  (*Id.* at 9.)  Plaintiff's request to review the disciplinary decision at the regional level was rejected on November 28, 2014. (*Id.* at 53.)

On November 4, 2014, Investigator, Captain, and Associate Warden issued an inmate investigation report on Plaintiff's disciplinary conviction with the recommendation that he be transferred to an institution commensurate with an appropriate security level. (doc. 3-3 at 66, 72.) Warden's request to transfer Plaintiff to a "greater security" prison facility was granted, and Plaintiff was transferred to Federal Medical Center (FMC) Devens on December 3, 2014. (*Id.* at 73.) Plaintiff alleges that some of his personal property, including his "legal materials," was lost or destroyed when he was transferred. (doc. 3-6 at 20-41.) Throughout this period, Plaintiff sent several letters, grievances, and Freedom of Information Act (FOIA) requests to Regional Administrator and Legal Counsel. (doc. 23 at 67.)

Plaintiff claims they retaliated against him for filing grievances, communicating with members of Congress, and assisting other inmates with their legal proceedings, by issuing a disciplinary conviction and transferring him to an unfavorable prison facility in violation of the First Amendment. (doc. 23 at 42.) He also claims Defendants denied him access to the courts because they transferred him to the SHU while his habeas corpus petition was pending and lost his legal materials. (*Id.* at 8.) He argues that the failure to intervene and prevent the retaliation against him violated prison rules and directives, and certain defendants were liable for failing to supervise Case Manager. (doc. 23 at 7-12, 31-39, 51-59, 64-67.)

Plaintiff also claims his due process rights were violated because he was wrongly charged and sanctioned for disciplinary infractions, and he asserts a disparate treatment claim because other inmates received preferential treatment and were not punished for similar disciplinary infractions. (docs. 23 at 8; 3-1 at 19; 13 at 5-6.) He claims that the conditions of his confinement and inadequate medical treatment violated his right to be free from cruel and unusual punishment. (doc. 23 at 8-9.)

Defendants allegedly acted in concert together and conspired to file false incident reports to place

him in the SHU, subject him to cruel and unusual punishment, and ultimately have him transferred

to a less desirable prison facility.  (*Id.*)  He seeks monetary damages for the physical injuries he

sustained, as well as $5,500 related to the loss and damage to his personal property. (*Id.* at 40.)  No

process has been issued.

## II.  PRELIMINARY SCREENING

Plaintiff is an inmate in the Federal prison system who has been permitted to proceed *in*

*forma pauperis*.  As a prisoner seeking redress from an officer or employee of a governmental entity,

his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*,

156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam).  Because he is proceeding *in forma pauperis*, his

complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b)

provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the court finds it is

frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks

monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke*

*v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on

an indisputably meritless legal theory." *Id.* at 327.  A complaint fails to state a claim upon which

relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).

## III.  SECTION 1983 AND *BIVENS*

Plaintiff seeks monetary damages under 42 U.S.C. § 1983.  Section 1983 "provides a federal

cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Plaintiff sues individuals employed by the federal BOP. Section 1983 does not apply when only federal action is at issue. *See Williams v. Wood*, 612 F.2d 982, 984 n. 1 (5th Cir. 1980). When a plaintiff alleges unconstitutional action by a federal actor, his claims arise under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* is "the counterpart to 42 U.S.C. § 1983," and it extends the protections afforded under § 1983 to parties injured by federal actors. *Chapman v. United States*, No. 4:06-CV-0426-Y, 2006 WL 3831227, at *1 n.8 (N.D. Tex. Dec. 27, 2006); *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005). "Because *pro se* complaints are liberally construed, the courts apply § 1983 or *Bivens* according to the actual nature of the claims, not the label or characterization of a *pro se* plaintiff." *Montgomery v. Deitelbaum*, No. 3:09-CV-2407-M, 2010 WL 582146, at *2 (N.D. Tex. Feb. 18, 2010) (internal citation omitted). Plaintiff's amended complaint must therefore be liberally construed as asserting claims under *Bivens* against the defendants. *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) (recognizing "[a] *Bivens* action is analogous to an action under § 1983- the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials"). Unless the defendants have deprived a plaintiff of rights, privileges, or immunities secured by the

6

Constitution or laws of the United States, a plaintiff has no viable claim under *Bivens*. *Id.*

## A.     <u>First Amendment</u>

Plaintiff claims that Defendants violated his First Amendment rights by retaliating against him for exercising his First Amendment rights and depriving him of access to the courts.

### 1.     *Retaliation*

Plaintiff claims that he was wrongly disciplined and transferred to another prison facility in retaliation for filing grievances, sending letters to members of Congress, and assisting other inmates with their legal matters.  (doc. 23 at 42-43.)

"Under the First Amendment, a prison official may not harass or retaliate against an inmate 'for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct.'" *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019) (quoting *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied*, No. 19-5365, 2019 WL 4923261 (U.S. Oct. 7, 2019). To state a retaliation claim, an inmate must allege: 1) a specific constitutional right; 2) an intent to retaliate against the prisoner for his or her exercise of that right; 3) a retaliatory adverse act; and 4) causation. *Peters v. Quarterman*, 252 F. App'x 705, 706 (5th Cir. Oct. 31, 2007) (citing *Hair v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003)).  Loss of privileges, cell restrictions, and prison transfers constitute adverse retaliatory actions.  *See McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998); *Jackson v. Cain*, 864 F.2d 1235, 1248 n.3 (5th Cir. 1989) (finding that an inmate does not have the constitutional right to select the location of his confinement, but transferring him in retaliation for exercising a constitutional right is unconstitutional).

Mere conclusory allegations of retaliation are not enough, however; an inmate must instead assert specific facts. *Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988).  He must show more

than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). He must either "produce direct evidence of retaliation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166. Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *McDonald*, 132 F.3d at 231 (citation omitted). "Furthermore, the alleged retaliatory acts must be more than *de minimis*, which means they must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Goff v. Todd*, No. CV 17-10547, 2018 WL 1441160, at *11 (E.D. La. Feb. 27, 2018) (citing *Morris v. Powell*, 449 F.3d 682, 687 (5th Cir. 2006)), *adopted by* 2018 WL 1409277 (E.D. La. Mar. 21, 2018).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *See Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citation omitted). Inmates may not "inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around themselves." *Woods*, 60 F.3d at 1166. When the retaliation claim involves a prison disciplinary matter, favorable termination of the underlying disciplinary charge is not a prerequisite for bringing the claim. *Id.* at 1164. This is because "[a]n action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Id.* at 1165 (citations omitted). Nevertheless, the existence of a "[legitimate] prison disciplinary report is highly probative, if not dispositive, of whether a defendant acts with a retaliatory animus." *See Rankin v. Pearson*, No. 5:11-CV-138-DCB-RHW, 2013 WL 1305517, at *6 (S.D. Miss. Mar. 26, 2013) (citing *Woods*, 60 F.3d at 1166), *aff'd by* 612 F. App'x 204 (5th Cir. 2015).

Here, Plaintiff filed grievances against Administrator and Case Manager in March and April

8

2014, and was interviewed by Investigator about Case Manager's alleged misconduct on June 24, 2014.  (docs. 23 at 46; 3-4 at 8.)  The records show that he signed a sworn statement agreeing he would not disclose information about the investigation and interview, but soon after his interview, he told other inmates about the investigation and that they would also be interviewed about Case Manager.  (docs. 3-3 at 70; 3-4 at 8.)  The following day, Administrator allegedly yelled at Plaintiff "about the consequences of inmates contacting their congressional representatives," and he was placed in the SHU pending the outcome of a separate investigation into his possible prison rule violations.  (docs. 23 at 51; 3-3 at 60; 3-5 at 32.)  The records show that on August 7, 2014, the investigation was completed and Investigator issued Plaintiff a disciplinary report for refusing an order and encouraging a group demonstration.  (doc. 3-3 at 60, 80-81.)  The disciplinary report was referred to the DHO, but was returned to be re-written to add the appropriate "disciplinary code." (*Id.*)  On September 18, 2014, Investigator amended the incident report with the disciplinary codes for refusing to follow an order and extortion, and Plaintiff was referred for disciplinary hearing by UDC Chair.  (*Id.* at 60, 83-84.)

At the hearing on October 20, 2014, Plaintiff was appointed a staff representative, presented evidence, and called witnesses.  (doc. 3-4 at 8-9.)  While some of his witnesses claimed they did not witness his discussion of the investigation, Plaintiff provided a written statement to Investigator admitting that he discussed the investigation with another inmate.  (*Id.* at 9.)  Based on the evidence, Hearing Officer found Plaintiff guilty of conduct which disrupts the orderly running of the institution and refusing to obey an order, but not of extortion.  (*Id.* at 8.)  She imposed sanctions, including temporary loss of certain privileges and administrative segregation.[4]  (*Id.* at 9.)  On

---

[4]  The specific sanctions imposed were 15 days disciplinary segregation and 60 days loss of commissary, visiting, telephone, and email privileges.  (doc. 3-4 at 9.)

November 20, 2014, Warden, Case Manager, and Administrator recommended that Plaintiff be transferred to "an institution with greater security" based on the "severity" of his disciplinary conviction. (doc. 3-2 at 21.) Plaintiff was transferred from the Camp on December 4, 2014. (docs. 23 at 9; 3-1 at 14.)

The amended complaint alleges a "chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166. Plaintiff has therefore sufficiently alleged facts supporting the first three elements of retaliation.[5] *See Hair*, 343 F.3d at 764. Although he links his disciplinary conviction and prison transfer to his grievances and complaints, his amended complaint includes his written statements and letters to various prison officials in which he acknowledged that he had discussed the investigation and interview with at least one other inmate. (docs. 3-3 at 84, 93-112; 3-4 at 1-9.) This conduct violated a direct order of Investigator, and impacted the underlying investigation and orderly running of the prison. (doc. 3-4 at 9.) Because Plaintiff admitted to engaging in conduct which, alone, would support the disciplinary charges levied against him, he has not sufficiently alleged facts showing that "but-for" his prior grievances and letters, he would not have been assigned to the SHU, sanctioned and found guilty of violating prison rules by engaging in disorderly conduct and refusing to obey an order, or transferred to a more secure institution. *See Sylvester v. Cain*, 311 F. App'x 733, 735-36 (5th Cir. 2009) (concluding that because inmate admitted to the conduct underlying the disciplinary charge levied against him, he failed to establish

---

[5] Plaintiff alleges that Defendants were also retaliating against him for assisting other inmates with their legal matters. (doc. 23 at 42-43.) "The constitutional protections afforded to prisoners that seek access to the courts extend only to those who prepare legal work for themselves." *Bartholomew v. Livingston*, No. CV H-16-2758, 2017 WL 4676652, at *4 (S.D. Tex. Oct. 13, 2017), *aff'd by* 744 F. App'x 859 (5th Cir. 2018). "[N]either any frivolous filings nor secondary litigation activity, i.e., legal research and writing that does not involve preparation of lawsuits challenging a writ writer's own conviction(s) or the conditions of his or her confinement, may comprise the basis of a retaliation claim." *See Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997). Because Plaintiff does not have a constitutional right to assist fellow prisoners in their legal matters, the fact that he did so cannot form the basis of a retaliation claim.

that "'but for' the alleged retaliatory motive of the defendants, he would not have been disciplined"); *Leggett v. Comer*, 280 F. App'x 333, 2008 WL 2094411 (5th Cir. 2008) (finding retaliation claim frivolous when plaintiff failed to show that "his property would not have been missing but for his letter-writing about [prison] officials, and [that] retaliatory intent motivated the lack of adequate inventories and storage of his property"); *Sanchez v. Moore*, No. 2:19-CV-69, 2019 WL 3892393, at *4 (S.D. Tex. Aug. 19, 2019) (finding plaintiff's retaliation claim failed to state a claim because his allegations that "he panicked when his ID card was taken from him and became loud and belligerent when asking for the return of his card from [defendant] . . . suggest[ed] that [defendant] and other prison officials took appropriate action in bringing a disciplinary case against [p]laintiff," which **"**fail[ed] to show that, but for some retaliatory motive, the disciplinary action filed against [p]laintiff would not have occurred"); *Davis v. LeBlanc*, No. CV 16-15591, 2017 WL 979035, at *15 (E.D. La. Jan. 23, 2017) ("The record of [plaintiff's] conviction of disciplinary violations at [the prison] does not demonstrate 'but for' causation; instead, it demonstrates that [defendants] had a reasonable, non-retaliatory motivation for charging [plaintiff] with the violations."), *adopted by* 2017 WL 959495 (E.D. La. Mar. 13, 2017).[6]

Because Plaintiff has not plausibly alleged facts showing that any retaliatory motive was the cause for his disciplinary sanctions and prison transfer, rather than his violation of prison rules, he is unable to sustain his claim of retaliation against any of the defendants, and it should be dismissed.

---

[6] While the extortion charge was ultimately dismissed for insufficient evidence, Plaintiff cannot show he suffered a retaliatory adverse act as a result of that charge. *See Castellano v. Fragozo*, 352 F.3d 939, 953-54 (5th Cir. 2003) (explaining that false disciplinary charges do not implicate the constitutional rights of a prisoner). As discussed, Plaintiff was already in the SHU at the time of the re-written incident report, and his disciplinary sanction was not based on the extortion charge. Even if there was retaliatory motive for the allegedly wrongful disciplinary charge, "[r]etaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris*, 449 F.3d at 686. The records show that Plaintiff continued to file grievances and to send letters complaining of prison staff misconduct to members of Congress even after the incident report was re-written. (*See* docs. 3-3 at 43-53, 59, 74-78; 3-4 at 12-37, 44-48, 54-55).

## 2.     *Access to Courts*

Plaintiff claims that his reassignment to the SHU and subsequent transfer to another prison unconstitutionally limited his right of access to the courts. (doc. 23 at 8.)  Defendants allegedly "lost and damaged [his] legal material[s]" during his transfer on December 3, 2014, and he had problems "gaining access to his legal documents in connection with his habeas corpus and rule 33 motion for a new trial proceeding[] that was underway in [this court]."  (*Id.* at 58.)

Prisoners have a constitutionally recognized right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977).[7]  This right "'is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights.'" *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1979)).  It is also an "aspect of the First Amendment right to petition the government for grievances." *Id.* at 820-21.  The right includes either "adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828.  The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  *Lewis v. Casey*, 518 U.S. 343, 356 (1996).

To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356; *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state

---

[7] *See also Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"); *Johnson v. Atkins,* 999 F.2d 99, 100 (5th Cir. 1993) ("Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses") (quoting *Chrissy F. v. Mississippi Dept. Of Public Welfare,* 925 F.2d 844, 851 (5th Cir. 1991)).

a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, a plaintiff must demonstrate that the lack of access has prevented him from filing, or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under § 1983. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). As the right of access to the courts is not a "freestanding right," it is necessary that he demonstrate actual injury resulting from the alleged denial of access. *Id.* at 351. Without a showing of an actual injury, plaintiffs lack standing to pursue claimed denials of access to courts. *Id.* at 349. This requires a plaintiff to allege, at a minimum, that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (quotation omitted). A plaintiff must describe the claim well enough to establish that its "arguable nature . . . is more than hope." *Id.* at 416 (internal quotation marks omitted).

Here, Plaintiff has not plausibly alleged an actual injury. He appealed the district court's denial of his motion for new trial in his criminal case on April 30, 2014, which was later affirmed by the Fifth Circuit.[8] *See United States v. Reagan*, No. 14-10532 (5th Cir., Feb. 24, 2015). Although this appeal was pending at the time of his temporary move to the SHU, he has not identified any motion he was unable to file, or any nonfrivolous claim he lost or was unable to pursue. *See McDonald,* 132 F.3d at 230-31 (noting that a plaintiff must show prejudice to his position as a

---

[8] Because they are matters of public record, judicial notice of Plaintiff's records in his criminal case may be taken. *See Hagwood v. Doe*, 3:16-CV-3038-G (BN), 2018 WL 1833053, at *1 (N.D. Tex. Mar. 27, 2018) (taking judicial notice of the plaintiff's state criminal record as part of the court's screening under 28 U.S.C. §§ 1915(e)(2) & 1915A); *see also Land v. Stone*, No 3:10-CV-981-B-BK, 2010 WL 5538413, at *4 (N.D. Tex. Dec. 14, 2010) (noting the propriety of taking judicial notice of adjudicative facts apparent from "state court criminal records") (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998)).

litigant) (citations omitted).  He has also wholly failed to allege any specific harm. *See Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (inmate alleging denial of access to courts must demonstrate actual injury).[9]  He has therefore failed to state a plausible claim that he was denied access to the courts.

### 3. *Supervisory Liability*

Plaintiff generally asserts supervisory liability claims against Hearing Officer, Regional Administrator, Administrator, Warden, and Legal Counsel.  (doc. 23 at 7-12, 31-39, 51-59, 64-67.)  He contends that Hearing Officer and Regional Administrator had "direct and indirect knowledge, supervision, and authority over [the Camp's] senior prison officials," and they knew or should have known that they filed a false incident report against him, which resulted in him being "transferred for exercising his [First] Amendment constitutionally protected rights." (*Id.* at 32, 35.)  He claims that Hearing Officer, Regional Administrator, and Legal Counsel had direct knowledge of the false incident report and his subsequent prison transfer based on the grievances, letters, and requests for information he submitted. (*Id.* at 31-39, 67.)  Plaintiff also contends that Administrator and Warden had supervisory liability because they had "direct knowledge, involvement and supervision of [Case Manager]." (*Id.* at 8, 11.)  Both defendants allegedly knew that Case Manager had been reassigned to the Camp because of his "troubled past history" with grievances filed by inmates at another prison. (*Id.*)  He also claims that Administrator and Warden failed to prevent Case Manager's

---

[9]  Plaintiff included copies of the grievances he filed to complain that the law library in the SHU was not adequate for his needs. (doc. 3-5 at 65-70).  As previously noted, there is no denial of access to courts if alternative means of assuring access to courts were available. *Lewis*, 518 U.S. at 351. "There is, however, no 'abstract, freestanding right to a law library or legal assistance,' and an inmate cannot demonstrate the requisite actual injury for an access-to-courts claim 'simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.'" *See Anderson v. Akinjide*, No. G-07-0386, 2008 WL 2964145 at *4 (S.D. Tex. July 30, 2008) (quoting *Lewis*, 518 U.S. at 351). More importantly, Plaintiff has not demonstrated any harm or prejudice he suffered in connection with those grievances. *See Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) (holding that a prisoner cannot prevail on an access-to-the-courts claim without proof of actual injury).

14

retaliatory conduct against him and "deliberately and knowingly fail[ed] to protect the plaintiff's safety, security and health." (*Id.*)

Supervisory officials cannot be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or *respondeat superior*[10] liability. *See Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005). To prevail against a supervisor under *Bivens*, a plaintiff must show that: 1) the supervisor's conduct directly caused a constitutional violation; or 2) that the supervisor was "deliberately indifferent" to a violation of a constitutional right. *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000). The acts of a subordinate "trigger no individual § 1983 liability." *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). There must be some showing of personal involvement by a particular individual defendant to prevail against such individual. *Id.*

"[C]ourts are reluctant to impute knowledge to supervisory or policy-making officials, and absent imputed knowledge, courts cannot find deliberate indifference." *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 987 (E.D. Tex. 2005). Courts have consistently held that knowledge may be imputed to a supervisory official only in those cases where there is evidence of a history of widespread abuse, "and even then only when there is a causal connection between the failure to supervise or train and the constitutional violation, and the failure to supervise or train amounts to deliberate indifference." *Batiste v. City of Beaumont*, 421 F. Supp. 2d 1000, 1006 (E.D. Tex. 2006). Plaintiffs must at least present evidence showing a pattern of similar violations. *See Estate of Davis*, 406 F.3d at 381; *Thompson*, 245 F.3d at 459. A single incident of an alleged constitutional violation

---

[10] *Respondeat superior* [Law Latin "let the superior make answer"] is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." RESPONDEAT SUPERIOR, *Black's Law Dictionary* (10th ed. 2014).

may serve as a basis for liability, however, if a plaintiff "prove[s] that the 'highly probable' consequence of a failure to train [or supervise] would result in the specific injury suffered, and that the failure to train [or supervise] represents the moving force behind the [c]onstitutional violation." *Estate of Davis*, 406 F.3d at 385-86.

Here, Plaintiff claims that Hearing Officer, Regional Administrator, Administrator, Warden, or Legal Counsel either permitted the "sham" disciplinary conviction and subsequent transfer to occur, or ignored letters, grievances, and other correspondence regarding his treatment. (doc. 23 at 8, 11, 32, 35, 67.)  A failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability, however. *See Amir-Sharif v. Valdez*, No. 3-06-CV-2258-P, 2007 WL 1791266, at *2 (N.D. Tex. Jun. 6, 2007) (holding that no liability under § 1983 had been alleged because a failure to take corrective action in response to a grievance does not rise to the level of personal involvement).  Further, his generalized allegation of Case Manager's "troubled" history at another facility does not sufficiently plead that these defendants had notice of a pattern of similar violations in the past but failed to train or supervise, or that the highly predictable consequences of their failure to train or supervise would result in injury to Plaintiff.  *See Estate of Davis*, 406 F.3d at 381.  To the extent he asserts supervisory liability claims against the other named defendants, he fails to present any facts or allegations beyond conclusory speculation.  Accordingly, Plaintiff's claims against Defendants for failure to train or supervise lack merit and should be dismissed as frivolous and for failure to state a claim.

### 4.    *Failure to Intervene*

Plaintiff claims Defendants failed to intervene and protect him from the misconduct and retaliatory acts of Case Manager. (doc. 23 at 8).

The Fifth Circuit has stated that "direct participation is not necessary for liability under § 1983. Any official who 'causes' a citizen to be deprived of [his] constitutional rights can also be held liable." *Morris v. Dearborne*, 181 F.3d 657, 672 (5th Cir. 1999) (citing *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990)). Nevertheless, there must be some showing of personal involvement by a particular individual defendant to prevail against such individual. *Champagne*, 188 F.3d at 314; *Thompson*, 709 F.2d at 382. "In order to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods*, 51 F.3d at 583. The requisite causal connection is established if the defendant set in motion a series of events that would foreseeably cause the deprivation of the plaintiff's constitutional rights. *Morris*, 181 F.3d at 672. The personal involvement or causal connection of each individual must be demonstrated because allegations of group liability are insufficient to sustain a *Bivens* action against each individual defendant. *Carney v. United States*, No. 3:99-CV-1989-M, 2004 WL 1285037, at *13 (N.D. Tex. Jun. 9, 2004) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 485 (1994) (explaining that it "must be remembered that the purpose of *Bivens* is to deter the officer")).

Because Plaintiff has failed to state a claim of retaliation, his separate claim against Defendants for failing to intervene likewise fails. He also does not allege a causal connection between the purported retaliatory conduct of Case Manager and the actions of the other defendants. He contends that he submitted grievances and voiced his complaints about Case Manager, but he fails to show the responses to his grievances were improper. (doc. 3 at 38.) "A prisoner does not have a constitutional right to a grievance procedure, and has no due process liberty interest right to having his grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir.

17

2005) (quoting *Orellana v. Kyle*, 65 F.3d 29 (5th Cir. 1995). He also fails to demonstrate how any of the non-supervisory defendants had the authority or ability to prevent Case Manager from retaliating against an inmate. Plaintiff notes that Defendants' failure to report all instances of staff misconduct violated certain rules and ordinances of the BOP,[11] but an alleged failure to follow prison rules and regulations does not give rise to a constitutional violation. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (citations omitted); *Stanley v. Foster*, 464 F.3d 565, 569 (5th Cir. 2006) (explaining that "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process"). To the extent Plaintiff argues that Defendants failed to intervene when Case Manager yelled at him or filed a false incident report, such claims also fail, as neither incident gives rise to unconstitutional conduct. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) ("[M]ere threatening language or gestures of a [state official] do not, even if true, amount to constitutional violations.") (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *Bishop v. Arcuri*, No. SA-09-CA-751-OG, 2010 WL 11484314, at *5 (W.D. Tex. May 17, 2010) ("Defendants' off-color comments, inappropriate expressions, and rude behavior, even if perceived as offensive or degrading, do not run afoul of the Constitution."); *Castellano*, 352 F.3d at 953-54 (noting that false disciplinary charges alone do not amount to a constitutional violation).

As noted, Plaintiff is unable to demonstrate that his prison reassignment and the incident reports against him were in retaliation of him exercising First Amendment rights. Because his allegations do not support the underlying claim of retaliation, his claims against the remaining defendants for failing to intervene fail and should be dismissed as frivolous.

---

[11] Plaintiff maintains that Defendants specifically violated FBOP/OIA P53420.11, *Standards of Employee Conduct* (doc. 3-3 at 23-25), and USDOJ/OIG 1210.24, *Reporting Instances of Staff Misconduct* (doc. 3-3 at 20-22).

B.    **Fifth and Fourteenth Amendments**

Plaintiff alleges that he was denied due process and equal protection.

*1.    Due Process*

Plaintiff claims that "the filing of a false rewritten incident report accusing [him] of 'extortion,'[ ] severely prejudiced [him] and had a chilling effect on [his] due process rights," and that the failure to appropriately respond to his grievances and complaints of staff misconduct also "had a chilling effect on [his] due process rights."  (doc. 23 at 62, 64.)  He also contends that he was denied the right to due process of law in the disciplinary hearing because Hearing Officer was not familiar with his evidence, had denied his request for continuance, and had made several "personal and severely prejudicial and bias comments" to him and his staff representatives.  (*Id.* at 64-65.)

"Prison discipline proceedings are not a part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To establish a violation of the due process of law in connection with a disciplinary hearing, a prisoner must establish that he has been denied a "'liberty interest' that the prison action implicated or infringed." *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007).  Liberty interests are "generally limited to freedom from  restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  In *Sandin*, the Supreme Court found that disciplinary segregated confinement for thirty days was not an atypical, significant deprivation that created a protected liberty interest because it was not a major disruption in environment and did not affect the duration of the sentence. *Id.* at 486-87.  Likewise, commissary and cell restrictions as punishment are merely changes in the conditions of confinement, that also do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765,

19

768 (5th Cir. 1997). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Inmates have "no liberty interest in being housed in any particular facility." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000) (citing *Meachum*, 427 U.S. at 225).

Here, after conducting a disciplinary hearing, Hearing Officer found Plaintiff guilty of two code violations and imposed sanctions including loss of privileges and disciplinary segregation.[12] (doc. 3-4 at 9.) He was later transferred to an institution with greater security as a result of his disciplinary conviction. (doc. 3-5 at 31.) The "false" extortion charge was dismissed. (*See* doc. 23 at 47.) A claim that a disciplinary charge was false, standing alone, does not state a claim upon which relief may be granted, however. *See Harris v. Smith*, 482 F. App'x 929, 930 (5th Cir. 2012). His temporary loss of privileges, disciplinary segregation, and subsequent transfer to another prison did not create a liberty interest, and did not implicate due process in the disciplinary hearing. *See Lasater v. Herrera*, 729 F. App'x 362, 362-63 (5th Cir. 2018) (allegation of false disciplinary report failed to state a claim, and due process was not implicated where plaintiff lost prison privileges); *Allums v. Phillips*, 444 F. App'x 840, 841 (5th Cir. 2011) (per curiam) ("Placement in administrative segregation or a change in custodial classification as a result of a disciplinary infraction, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest, and, therefore, there is no right to due process."). Finally, while Plaintiff complains that his grievances were denied, an inmate does not have a federally protected interest in having a complaint resolved to his satisfaction. *See Geiger*, 404 F.3d at 374-75. Accordingly, Plaintiff has failed to allege any

---

[12] The specific sanctions imposed were 15 days disciplinary segregation and 60 days loss of commissary, visiting, telephone, and email privileges. (doc. 3-4 at 9.)

due process violations against Defendants, and the claims should be dismissed.[13]

### 2.   *Federal Rule of Appellate Procedure 23(a)*

Plaintiff contends that Defendants violated Rule 23(a) of the Federal Rules of Appellate

Procedure by moving him to the SHU while his habeas proceedings were pending. (doc. 23 at 8.)

Rule 23(a) concerns the transfer of custody of a prisoner pending review of a decision in a

habeas action. *United States v. Pfluger*, 522 F. App'x 217, 218 n. 1 (5th Cir. 2013) (per curiam).

It provides:

> Transfer of Custody Pending Review. Pending review of a decision in a habeas
> corpus proceeding commenced before a court, justice, or judge of the United States
> for the release of a prisoner, the person having custody of the prisoner must not
> transfer custody to another unless a transfer is directed in accordance with this rule.
> When, upon application, a custodian shows the need for a transfer, the court, justice,
> or judge rendering the decision under review may authorize the transfer and
> substitute the successor custodian as a party.

Fed. R. App. P. 23(a).

A violation of Rule 23(a) does not constitute a constitutional violation or create a cause of

action under *Bivens*.  *Phelps v. Winn*, No. CIV. A. 05-40003-GAO, 2007 WL 2872465, at *3 (D.

Mass. Sept. 27, 2007) (citing *Bivens*, 403 U.S. at 389); *see also Brown v. Zickefoose*, No. CIV.

11-4421 RBK AMD, 2015 WL 1646820, at *5 (D.N.J. Apr. 14, 2015) (his "citation to [Rule 23(a)]

notwithstanding, plaintiff's due process rights were not violated by the transfer.").   Moreover,

---

[13] A prisoner in a *Bivens* action may not recover damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless he "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  *Heck* has been extended to prison disciplinary proceedings by the Supreme Court. *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997).  Accordingly, "claims for damages and declaratory relief that necessarily imply the invalidity of the punishment imposed in a disciplinary conviction are not cognizable in a 42 U.S.C. § 1983 proceeding." *Id.*  Unless an inmate's disciplinary proceeding is overturned, invalidating the basis of his punishment, the inmate cannot maintain a *Bivens* action for damages. *See Johnson v. Stalder*, 82 F. App'x 906, 907 (5th Cir. 2003). Here, Plaintiff failed to overturn his disciplinary conviction as required by *Heck. See Edwards*, 520 U.S. at 648.  His due process claim is also *Heck*-barred.

Plaintiff had a direct appeal of his underlying conviction pending at the time of his transfer.[14]  He filed his habeas petition under 28 U.S.C. § 2255 several months *after* he was reassigned to the SHU,[15] so it was not pending appellate review when he was transferred from the SHU to a new prison facility on December 3, 2014.[16]  *See Hairston v. Nash*, 165 F. App'x 233, 235 (3rd Cir. 2006) (explaining that Rule 23(a) applies to prisoners whose habeas petitions have been decided and are pending appellate review).  Any due process claim based on the alleged violation of Rule 23(a) should be dismissed as frivolous.

### 3.    *Equal Protection*

Plaintiff claims he suffered disparate treatment based on the disposition and imposition of sanctions against him relative to the treatment of other inmates who committed similar or more severe prison code violations during the same period.  (doc. 23 at 8.)

The Due Process Clause of the Fifth Amendment "applies to the federal government a version of equal protection largely similar to that which governs the states under the Fourteenth Amendment," which prohibits states from denying any person within their jurisdiction the equal protection of the laws and essentially requires that all similarly situated persons be treated alike. *Rodriguez-Silva v. I.N.S.*, 242 F.3d 243, 247 (5th Cir. 2001); *see Plyler v. Doe*, 457 U.S. 202, 216, (1982); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.15 (5th Cir. 2001).  To state an equal protection claim, a plaintiff must allege that a government actor "intentionally discriminated against

---

[14]  Plaintiff filed his notice of appeal in No. 3:07-CR-0289-M(7) on April 30, 2014.  *See United States v. Reagan*, No. 14-10532 (5th Cir.).

[15]  Plaintiff filed his § 2255 motion on September 22, 2014. *See Reagan v. United States*, No. 3:14-CV-3420-M-BT (N.D. Tex.), (doc. 2).

[16]  Plaintiff filed his notice of appeal in his habeas case on May 23, 2016. *See Reagan v. United States*, No.16-10685 (5th Cir.).

the plaintiff because of membership in a protected class." *See Williams v. Bramer*, 180 F.3d 699,

705 (5th Cir. 1999). "[A]n equal protection claim can in some circumstances be sustained even if

the plaintiff has not alleged class-based discrimination, but instead claims that she has been

irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591,

601 (2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

      To state a class-of-one equal protection claim, a plaintiff must allege that a state actor has

intentionally treated him or her differently than others similarly situated, and there is no rational

basis for the difference in treatment. *See Olech*, 528 U.S. at 564. "[T]he Fifth Circuit requires

Plaintiffs to show 'that the defendant deliberately sought to deprive [them] of the equal protection

of the laws for reasons of a personal nature unrelated to the duties of the defendant's position.'"

*Lugo v. Collin County*, No. 4:11-CV-00057, 2011 WL 4378093 at *11 (E.D. Tex. Aug. 2, 2011)

(citing *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled on other grounds by*

*McClendon v. City of Columbia*, 305 F.3d 314, 328-29 (5th Cir. 2002)). "'[I]f the challenged

government action does not appear to classify or distinguish between two or more relevant persons

or groups, then the action—even if irrational—does not deny them equal protection of the laws.'"

*Little v. Tex. AG*, No. 3:14-CV-3089-D, 2015 WL 5613321 at *6 (N.D. Tex. Sept. 24, 2015)

(quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)). Conclusory allegations of "class

of one" discrimination fail to state a claim. *See Bell v. Woods*, 382 F. App'x 391, 393 (5th Cir.

2010).

      Here, by arguing that Defendants singled him out specifically and punished him more

severely than other similarly situated inmates at the Camp, Plaintiff appears to assert a class-of-one

equal protection claim. (doc. 23 at 8.) He has not alleged sufficient facts to state a plausible claim

that he was "similarly situated" to unpunished inmates, or that there was no rational basis for the difference in treatment, however. *See Olech*, 528 U.S. at 564. He offers nothing beyond his bare assertion that he had been transferred as punishment for discussing the investigation while other inmates were not similarly punished for the same infraction.[17] The Fifth Circuit has held that bare and conclusory assertions are insufficient to support a "class of one" equal protection claim, particularly where these assertions offer no basis upon which to determine that persons similarly situated to the plaintiff were treated differently without rational basis. *See Bell*, 382 F. App'x at 393 (conclusory allegation that inmate was treated differently from other sex offenders failed to state a claim where inmate did not identify any other prisoners who were sexual offenders and were allowed to enroll in computer courses and inmate did not allege that other prisoners were convicted of the same offense as he was or that they were allowed into the same courses for which he applied); *see also Kyles v. Garrett*, 222 F. App'x 427, 429 (5th Cir. 2007) (holding that a prisoner's conclusory allegations that others similarly situated had been granted parole were insufficient to state an equal protection claim where the prisoner "offer[ed] no specific factual support for his assertions"). Even assuming a "class of one" equal protection claim is available to Plaintiff, it is without merit and should be denied for failure to state a claim.[18]

---

[17] Plaintiff does not specifically identify similarly situated inmates in his amended complaint, but his grievances identify inmates who were not punished for discussing the investigation with other inmates. (doc. 3-1 at 19; 3-6 at 8.) They do not, however, provide specific factual support showing those inmates were "similarly situated" to Plaintiff based on them being involved in the same activities, them having the same or similar disciplinary history and criminal background, or the evidence of their alleged misconduct being the same and presented in the same manner to prison officials.

[18] Because Plaintiff's equal protection claim involves a prison disciplinary matter, the "class of one" theory may not apply. In *Engquist,*, the Supreme Court concluded that government employees cannot bring class-of-one claims challenging adverse employment because such actions are discretionary, "based on a vast array of subjective, individualized assessments." 553 U.S. at 605. Although not expressly addressed by the Fifth Circuit, several courts have broadly interpreted *Engquist* to preclude application of the "class of one" theory to equal protection claims in prison disciplinary matters because they involve authorized governmental decisions considered inherently individualized and discretionary. *See Howard v. Koeller*, 756 F. App'x 601, 604 (7th Cir. 2018) (affirming lower court holding that "class of one" equal-protection claim based on a prison disciplinary infraction failed because it challenged discretionary

C.    **Eighth Amendment**

Plaintiff contends that he suffered cruel and unusual punishment because the living conditions in the SHU, in which he was housed for approximately five months in 2014, was "inhumane," "draconian," and "dungeon-type" with "unsanitary inhumane living conditions," and he was also denied adequate medical treatment. (doc. 23 at 8, 56.)

1.    *Conditions of Confinement*

"The Constitution 'does not mandate comfortable prisons'. . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989) (internal citation omitted). The Eighth Amendment's prohibition against cruel and unusual punishment applies to conditions of confinement; however, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To be found liable for denying humane conditions of confinement, a prison official must know about and disregard "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511

---

decision making); *Dawson v. Norwood*, No. 1:06-CV-914, 2010 WL 2232355, at *2 (W.D. Mich. June 1, 2010) (concluding that the class-of-one equal protection theory had no place "in the context of prison officials making discretionary decisions concerning inmates"); *Upthegrove v. Holm*, No. 09-CV-206, 2009 WL 1296969, at * 1 (W.D. Wis. May 7, 2009) (finding class-of-one equal protections claims "not cognizable in such an individualized and discretionary setting as the prison setting" and dismissing claim based on prison official's decision about what inmate could wear at a particular time); *see cf. Milton v. Smith*, No. CV 19-0214, 2019 WL 1852688, at *5 (W.D. La. Apr. 10, 2019) (explaining that because participation in work release is specially reserved to the discretion of correctional officers, inmate's work release rejection was excepted from a "class of one" claim), *adopted by* 2019 WL 1848554 (W.D. La. Apr. 24, 2019); *Adams v. Meloy*, 287 F. App'x 531, 534 (7th Cir. 2008) (rejecting application of "class of one" equal protection theory to parole board decisions); *Brown v. Chandler*, No. 5:13CV-P99-R, 2013 WL 6487505, at *2 (W.D. Ky. Dec. 10, 2013) (citing cases) ("[C]ourts have found that an equal protection claim cannot be asserted under the class-of-one theory when a parole board's decisions are subjective and discretionary, as they are in Kentucky."); *Towery v. Brewer*, No. CV-12-245-PHX-NVW, 2012 WL 592749, at *12 (D. Ariz. Feb. 23, 2012) (concluding that class-of-one claims do not lie in death-row inmate challenges to execution protocol determinations by the state's department of corrections), *aff'd on other grounds*, 672 F.3d 650 (9th Cir. 2012).

U.S. 825, 837 (1994). Two requirements must be met in order to allege a constitutional violation related to the conditions of confinement: (1) the condition must objectively be "so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need," and (2) the court must subjectively determine whether prison officials were "deliberately indifferent to inmate health or safety." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal citations and quotation marks omitted).

### a.    Extreme Temperatures

Plaintiff contends that while housed at the SHU, he was subjected to extreme temperatures in violation of the Eighth Amendment. (doc. 23 at 56-57.) The Fifth Circuit has recognized that prisoners have a right to protection from extreme temperatures that can adversely impact their health and safety. *See Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (finding Eighth Amendment violation for subjecting prisoners to temperatures of extreme heat); *Beck v. Lynaugh*, 842 F.2d 759, 761 (5th Cir. 1988) (holding that a prisoner's allegations of exposure to the elements during winter months stated a cause of action under the Eighth Amendment). Prison cell temperatures that are "merely uncomfortable," however, "does not reflect 'a basic human need that the prison has failed to meet' and is not constitutionally suspect." *Ball*, 792 F.3d at 592 (quoting *Edwards*, 51 F.3d at 581). There is no static test to determine whether conditions of confinement are cruel and unusual, but punishment rises to the level of a constitutional violation if the conditions are "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities.'" *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Edwards*, 51 F.3d at 581). The plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *Alexander*, 351 F.3d at 630-31.

Plaintiff alleges that there was no air conditioning or fans and insufficient ventilation during the extreme heat and high humidity of the summer months, and that his cell was a "frying pan 24/7." (doc. 23 at 8.)  In response to the heat, inmates were only provided two servings of ice per day.  (*Id.* at 57.)  He also alleges that the SHU did not have a central heat system to handle the "extreme cold" and "below freezing temperatures during the winter months." (doc. 23 at 56.)  Plaintiff claims he suffered from dehydration, dizziness, and heat rash all over his body.[19] (doc. 23 at 32.)

The conditions of extreme cold and poor ventilation, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation. *See Johnson v. Thaler*, 202 F.3d 265, 1999 WL 1131941, *1 (5th Cir. Nov. 12, 1999) (concluding that the inmate plaintiff's "conclusory allegations of inadequate ventilation and excessive heat do not entitle them to relief under 42 U.S.C. § 1983").  Plaintiff fails to identify a specific injury he sustained as a result of the "extreme cold" beyond general discomfort.  *Johnson v. Texas Bd. of Criminal Justice*, 281 F. App'x 319, 2008 WL 2337324, at *2 (5th Cir. 2008) (vague allegations of exposure to either cold or heat in a prison environment fail to state a violation of the Eighth Amendment absent any claim that he suffered from severe temperature-related injuries).  Further, claims that the ventilation system in the SHU was inadequate, without more, does not establish a violation of his Eighth Amendment rights.  *Johnson*, 1999 WL 1131941, at *3 (allegations of inadequate ventilation and excessive heat did not state a constitutional claim); *Parker v. Smith*, 22 F.3d 1094, 1994 WL 198944, *2 (5th Cir. May 6, 1994) (upholding the frivolous dismissal of a plaintiff's claim that "the ventilation system in the [] jail [was] inadequate").

With respect to his claims of extreme heat, the only physical injuries or illnesses Plaintiff

---

[19]  Plaintiff did not specifically attribute these injuries to the conditions of his confinement, but generally alleged those injuries in his claim for damages based on all of Defendants' constitutional violations.

claims to have suffered were dehydration, dizziness, and heat rash, which are common and minor ailments found even among the non-incarcerated population.  The temperature and ventilation quality in prison cells will rise to the level of a constitutional violation only if they result in "a *serious or significant* . . . injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.), *cert. denied*, 510 U.S. 949 (1993) (emphasis added).  Generally, this standard for a constitutional violation requires a plaintiff to endure "a life-long handicap or permanent loss." *See Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Tasby v. Cain*, 86 F. App'x 745, 2004 WL 243433, at *1 (5th Cir. 2004) (developing a rash from being placed in restraints does not establish that the plaintiff suffered "serious harm").  He alleges no serious harm or risk of serious harm in the constitutional sense. *Edwards*, 51 F.3d at 581 (Eighth Amendment claims involving alleged uncomfortably high temperatures in lockdown resulting in aggravation of a sinus condition did not survive summary judgment); *see also Clark v. Gusman*, No. CIV.A. 11-2673, 2012 WL 1825306, at *6 (E.D. La. Mar. 29, 2012) (finding condition of confinement claims frivolous because prisoner's claims that heat aggravated his high blood pressure was "speculative at best"); *Ventry v. Gusman*, 2012 WL 1405862, *7 (E.D. La. March 29, 2012) (dismissing as frivolous an inmate's claim regarding uncomfortably hot conditions of confinement where his allegations "[fell] short of what is required to establish a constitutional violation," and where his claim regarding the aggravation of his medical condition was "speculative at best").

Even if Plaintiff was able to demonstrate some physical harm beyond *de minimis* inconvenience, his claims would still be subject to dismissal because he has not sufficiently alleged that any of the named defendants were deliberately indifferent to his plight.  Plaintiff claims that

28

Defendants were aware of the unconstitutional conditions of confinement because they regularly visited the SHU, participated in "weekly SHU meetings," and received and had access to "weekly SHU reports regarding the inmates confined within the SHU." (doc. 23 at 56-57.)  There are no allegations that he personally complained to Defendants about the extreme temperatures and ventilation at the SHU or the injuries he had sustained from those conditions, however. (*Id.*)  He makes no specific factual allegations that Defendants were subjectively aware of a substantial risk of serious harm to him and failed to protect him from that harm. *Farmer*, 511 U.S. at 839-40.  The "'failure to alleviate a significant risk that [the official] should have perceived, but did not,' is insufficient to show deliberate indifference." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *id.* at 838).  Accordingly, Plaintiff's Eighth Amendment claims regarding the extreme temperatures and poor ventilation of the SHU lack an arguable basis in law or fact and should be dismissed as frivolous.

### b.    Basic Hygiene

Plaintiff claims Defendants only allowed the inmates to take showers three times per week and would humiliate them by forcing them "to resort to stripping down and wearing their boxers" to tolerate heat. (doc. 23 at 9.)  He also claims that there was an overwhelming odor of ammonia in the cells from the "body perspiration" of inmates that soiled their sheets, towels, and clothes. (*Id.*)

The Constitution "forbids deprivation of the basic elements of hygiene." *Daigre v. Maggio*, 719 F.2d 1310, 1312 (5th Cir. 1983).  "Prison authorities may not withhold from prisoners the basic necessities of life, which includes reasonably adequate sanitation." *Sanford v. Brookshire*, 879 F. Supp. 691, 693 (W.D. Tex. 1994).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing

*Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)).  Minor restrictions to hygiene or sanitation, although admittedly unpleasant, do not amount to a constitutional violation. *Johnson*, 281 F. App'x at 322; *see also Fountain v. Thaler*, No. 6:13-CV-958, 2015 WL 5168775, at *17 (E.D. Tex. Sept. 2, 2015) ("There is no constitutional right to a daily shower.") (citing *Walker v. Montzes*, 771 F.2d 920, 928 (6th Cir. 1985).

Even though inmates had limited access to the showers, Plaintiff has shown no extreme deprivation of hygiene. *See, e.g., Curry v. Byrd*, No. 5:13-CV-196-DCB-MTP, 2016 WL 1068858, at *3 (S.D. Miss. Jan. 28, 2016) (noting that even though the plaintiff claimed he "suffered discomfort" due to the lack of a daily shower, such allegations do not rise to the level of a constitutional violation).  Moreover, though he felt humiliated because he needed to strip down to his underwear to tolerate the heat, "[c]laims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment." *Jackson v. Liberty County*, 860 F. Supp. 360, 363 (E.D. Tex. 1994).  Plaintiff's allegations fail to show that he was deprived of access to proper hygiene amounting to the infliction of cruel and unusual punishment.  Accordingly, his hygiene claims should be dismissed for failure to state a claim.

### c.    Special Dietary Meals

Plaintiff contends that he was suffering from hallucinations, paranoia, and anxiety attacks, and suffered numerous low and high sugar levels due to the unavailability of "diabetic diet food" at the SHU. (doc. 23 at 9.)  He allegedly lost thirty pounds as a result.  (*Id*.)

An inmate has the right to be provided with well-balanced meals that are sufficient to maintain his health and well-being. *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996).  The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the

30

"minimal civilized measure of life's necessities." *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998). There is no constitutional violation if the inmate has been negligently fed food that might be injurious to his health. *Green v. Atkinson*, 623 F.3d 278, 280-281 (5th Cir. 2010). The inmate must allege facts which show that the defendant provided him with food that endangers his health and was acting with deliberate indifference. *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999). It must be alleged that the defendant knew of the inmate's condition and disregarded it. *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).

Plaintiff's amended complaint references his need for diabetic-appropriate meals and his weight-loss, but asserts no allegations about any meal requests he made, or that he was without any alternatives. (doc. 23 at 9.) He has not alleged facts sufficient to state a claim that he was deprived of the "minimal civilized measure of life's necessities." *See Talib*, 138 F.3d at 214 n.3. "Although [a plaintiff] is entitled to basic health care needs met, he does not have a right to the best diet available and there is no guarantee that every item served will meet his standards." *Barton v. Dietician*, No. H-12-1069, 2012 WL 3063904, at *3 (S.D. Tex. July 26, 2012) (citing *Mayweather v. Foti*, 958 F.2d 91 (5th Cir.1992). Plaintiff only offers conclusory allegations to support his claim that the prison diet was inappropriate for his condition and caused him harm, which is insufficient to state a claim for which relief might be granted. *See, e.g., Dominguez v. Hoover*, 2010 WL 2382325, at *3 (N.D. Tex. Feb. 2, 2010) (explaining that the plaintiff failed to raise a constitutional violation claim despite the fact that his diabetic diet tray was discontinued for a short period of time). To the extent Plaintiff is asserting a constitutional claim based on an inadequate diet, it fails because he has not alleged facts showing a serious medical need or subjective knowledge of a substantial risk of serious harm by Defendants.

2.    *Medical Treatment*

Plaintiff generally alleges that Defendants were deliberately indifferent to his safety, security, and health needs by placing him in the SHU, but not taking "reasonable measures to guarantee [his] health or safety." (doc. 23 at 8.)

The humane conditions of confinement required by the Constitution include the receipt of adequate medical care. *Farmer*, 511 U.S. at 832.  To succeed on a claim for damages for inadequate medical care, a plaintiff must demonstrate that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. *Id.*  A prison official is liable for "deliberate indifference" "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

There are two requirements an inmate must satisfy to establish a constitutional violation based on inadequate medical care. *Farmer*, 511 U.S. at 832.  If a court finds that either component is not met, it need not address the other component. *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quotation omitted).  This objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To satisfy the second component, the plaintiff must establish that the defendant possessed

32

a culpable state of mind. *Farmer*, 511 U.S. at 838 (citing *Wilson*, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The culpable state of mind requires more than negligence, but less than intent to cause harm or knowledge that harm will result from the acts or omissions. *Id.* at 835; *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (noting that the culpable state of mind "is an extremely high standard to meet") (citations and internal quotation marks omitted). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997).

### a.    No Medical Evaluation

Plaintiff claims that he never received "any form of medical evaluation," despite the fact that he had Type II diabetes and other "well-documented" medical conditions, including hypertension, cholesterol, and other pain, and that Defendants knew or should have known about the risks to his health and safety because they had access to his medical records. (doc. 23 at 49, 57.)

"The 'deliberate indifference' standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s]. *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997). "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

Plaintiff does not allege that he requested a medical evaluation for his diabetes, hypertension, or cholesterol; he appears to argue that such a medical evaluation should have been conducted

33

automatically upon his arrival at the SHU. (doc. 23 at 49.)  Although inmates are entitled to adequate medical care, the Constitution does not mandate medical treatment absent an actual known medical need. *See Farmer*, 511 U.S. at 847.

### b.    Ignored Medical Requests

Plaintiff alleges that while housed in the SHU, he sought medical treatment and requested a medical pass, but his requests were ignored. (doc. 23 at 49-50.)

#### i.    *Severe Headaches and Heat Bumps*

Plaintiff claims that he complained to medical staff at the SHU about severe headaches and heat bumps, but his repeated requests for medical attention were completely ignored.  (doc. 23 at 49-50.)  Although he claims he made "repeated requests" for medical attention, he does not specify the number of requests made, the individual defendants who received his requests, or the time-frame when those requests were submitted.[20] (doc. 23 at 49.)  These allegations fail to satisfy the minimal pleading requirements to sustain a *Bivens* action for cruel and unusual punishment.

Even if true, the failure or refusal to treat extreme headaches and heat bumps does not rise to the level of severe deprivation or a denial of life's necessities constituting a constitutional violation. *See Dickson v. Colman*, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).  Plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes. *Hill*, 40 F.3d at 1188; *see also Jackson v. Douglas*, 270 F. App'x 462, 2008 WL 748652, at *1 (8th Cir. 2008) (boils on plaintiff's arm and chest not an objectively serious medical need); *Stepnay v. Goff*, 164 F. App'x 767, 2006

---

[20]  In his amended complaint, he identifies an "Indian female" medical staff member who allegedly did not respond promptly to his medical problems, but he does not appear to name that individual as a defendant. (doc. 23 at 57.)

WL 182059, at *2 (10th Cir. 2006) (Inmate with staph infection "may not avoid dismissal . . . by merely asserting conclusory allegations that his condition obviously required a doctor's attention because most skin conditions are not intuitively serious."); *Gonzalez-Reyna v. Ellis*, No. 1:09cv522, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation.").   He does not allege facts showing that the headaches and heat bumps he was experiencing were more than minor and common ailments that resulted in no such permanent loss, nor that they rose to the level of serious medical needs for constitutional purposes. *See Dickson*, 569 F.2d at 1311.

### ii.    Medical Pass

Plaintiff claims that he suffered "severe injuries" to both of his feet and lower legs as a result of having to wear the flat walking shoes that are issued to inmates at the SHU, and from having to climb up and down his assigned top bunk despite having a medical pass for the lower bunk. (doc. 23 at 49.)  He alleges that he submitted numerous "cop out" requests to the staff at the SHU and also requested soft-soled shoes. (*Id.*)   He claims the SHU medical staff "completely ignored [his] repeated requests for medical attention," and that Defendants knew or should have known that his medical issues were being ignored.  (doc. 23 at 57.)  He claims that he will have to undergo physical therapy for several months and will require additional medication to treat his pain. (doc. 23 at 50.) "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.  His allegations about his medical care, even if construed as being asserted against the SHU staff members, are not sufficient to state a violation

of his constitutional rights. *See Morgan v. Tex. Dep't Crim. J.*, 537 F. App'x 502, 507 (5th Cir. July 31, 2013) (prescribing a treatment that causes serious side effects does not rise to the level of a constitutional violation); *Dallas v. Stalder*, 73 F. App'x 79 (5th Cir. June 24, 2003) (failing to advise an inmate of the side effects of a medication, for which he received medical care, is not deliberate indifference to a substantial risk of serious harm).

Notably, Plaintiff's allegations are devoid of any facts regarding the culpable state of mind for each named defendant. He alleges that he submitted "cop-out" requests to the medical staff in the SHU, but there are no allegations that he directly notified any of the defendants about his medical needs. (doc. 23 at 49.) He speculates that each defendant "knew or should have reasonably known" about his ignored medical requests based simply on his or her respective job titles. (*Id.* at 57.) Such bald, unadorned allegations are insufficient to survive the minimal pleading requirements for pre-screening under §§ 1915A and 1915(e). *Iqbal*, 556 U.S. at 678. As discussed, in the context of a *Bivens* claim, there must be some showing of personal involvement by a particular individual defendant in order to prevail against such individual. *Champagne*, 188 F.3d at 314; *Thompson*, 709 F.2d at 382. Further, there is no vicarious or *respondeat superior* liability of supervisors under *Bivens*. *See Estate of Davis*, 406 F.3d at 381. Plaintiff fails to point to any evidence raising a genuine issue of material fact regarding Defendants' personal involvement in the of denial of any medical treatment while housed at the Camp or the SHU.

Accordingly, any *Bivens* claim asserted against Defendants based on violations of the Eighth Amendment should therefore be dismissed as frivolous.

**D.    Conspiracy**

Plaintiff contends Defendants conspired together to violate his constitutional rights by

issuing a false incident report against him and getting him reassigned to another prison. (doc. 23 at 32.)

Generally, to state a claim for conspiracy under *Bivens*, a plaintiff must "establish the existence of a conspiracy" as well as a violation of a constitutional right in furtherance of the conspiracy. *Thompson v. Johnson*, 348 F. App'x 919, 920 (5th Cir. 2009) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (to establish a conspiracy claim, a prisoner must demonstrate (1) an agreement between persons acting under color of law to commit an illegal act, and (2) an actual deprivation of the prisoner's constitutional rights in furtherance of the conspiracy)). "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit a criminal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). Conclusory allegations of conspiracy will not support a recoverable claim against a government actor. *Wilson v. Budney*, 976 F.2d 958 (5th Cir. 1992). The plaintiff's allegations must include the operative facts of the alleged conspiracy. *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987). Further, recovery on a claim of conspiracy is contingent upon an actual deprivation of a constitutional right; a mere conspiracy to deprive is insufficient. *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984).

Plaintiff alleges that "Defendants joined and agreed together and personally participated in the decision to issue [him] a false incident report in order to have him placed into the SHU, ultimately to be transferred for exercising his First Amendment constitutionally protected rights." (doc. 23 at 8.) He also alleges that Defendants "deliberately and knowingly joined together, participated, gave consent too[sic] and actively conspired together with the other defendants" to deprive him of reasonable medical treatment in violation of the Eighth Amendment. (*Id.*) Plaintiff's conclusory allegations of an agreement, without any facts tending to show an agreement, are

insufficient to state a viable conspiracy claim. *See Bowen v. Quarterman*, 339 F. App'x 479, 482 (5th Cir. 2009) (finding that allegations that it was reasonable to believe that the defendants were part of a conspiracy, without any facts that tended to show an agreement between them, were insufficient to state a viable conspiracy claim) (citing *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986)); *Cardenas v. Young*, 655 F. App'x 183, 186-87 (5th Cir. 2016) (noting that the plaintiff did not allege that the defendants expressly made an agreement to violate his constitutional rights, only that two defendants ordered that he be placed in segregation and that other defendants were in agreement to deny him equal protection and due process, and finding these conclusory allegations insufficient to state a viable conspiracy claim under *Bivens*).   The act of conspiring to violate a constitutional right, in and of itself, does not form the basis of a *Bivens* action; there must be an actual deprivation of constitutional rights before a conspiracy claim arises  *See Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).  Because Plaintiff has failed to sufficiently plead facts that any of his constitutional rights were violated, his conspiracy claims against Defendants should be dismissed as frivolous.

## E.   <u>Federal Tort Claims Act</u>

Based on his damages claim, Plaintiff appears to sue under the Federal Tort Claims Act (FTCA) in connection with the misconduct of government employees.[21]

"Congress enacted the FTCA as a limited waiver of the sovereign immunity of the United States." *Johnston v. United States*, 85 F.3d 217, 218 (5th Cir. 1996).  Subject to some specific exceptions, the FTCA "gives federal district courts jurisdiction over claims against the United States for money damages 'for injury or loss of property, or personal injury or death caused by the

---

[21]  The records included with his amended complaint indicates that Plaintiff submitted an administrative tort claim under 31 U.S.C. § 3723 for his property loss, and his claim was ultimately denied on July 7, 2016. (doc. 3-6 at 20.)

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Sheridan v. United States*, 487 U.S. 392, 398 (1988) (quoting 28 U.S.C. § 1346(b)).

Here, Plaintiff is seeking undisclosed monetary damages for personal injuries he sustained at the SHU, as well as a claim for $5,500 relating to his personal property that was allegedly lost or damaged when he was transferred from the Camp. (doc. 23 at 40.)  He has not sued Defendants in their official capacities, but limited his claims against them in their individual capacities. (*Id.* at 7-39.)  The only proper defendant in a FTCA suit is the United States; individual defendants cannot be sued under the FTCA in their individual capacities. *See* 28 U.S.C. § 2679(a); *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988).  Plaintiff has therefore failed to state a viable claim against the individual defendants under the FTCA.

## IV.  RECOMMENDATION

Plaintiff's amended complaint should be **DISMISSED** with prejudice as frivolous and for failure to state a claim under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B).  This dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).[22]

---

[22]  Section1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

SIGNED this 30th day of October, 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

40